WALBRUNN et al., Appellants, v. BALLEN.

1. **Mistaken Possession, when Adverse.** If one takes possession of the land of another, believing and claiming it to be his own, his possession is adverse. It is only where he occupies by mistake and with no intention of claiming any thing which does not belong to him, that it is not adverse. See *Houx v. Batteen, ante,* p. 84.

2. **Adverse Possession:** PROPOSAL TO BUY CONFLICTING CLAIM. A proposal from one in the possession of land to buy out the holder of the true title, does not necessarily amount to a recognition of this title, or an acknowledgment that the possession is not adverse.

*Appeal from Livingston Circuit Court.*—HON. E. J. BROAD-
DUS, Judge.

*H. M. Pollard* for appellants.

HENRY, J.—This was an action of ejectment com
menced by Walbrunn et al., on the 2d day of September
1875, against William Ballen for the northwest quarter of
the northwest quarter of section 24, township 56, range.23,
in Livingston county. Defendant denied that he had, or
ever had, possession of any part of said tract of land ex-
cept 15 44-100 acres lying in the northwestern corner of
said tract; and disclaiming any title to the balance, pleads
the statute of limitations as to said 15 44-100 acres. Plaint-
iffs' evidence tended to show title in themselves to the
whole tract. Defendant's evidence tended to show that he
had been in possession of the fifteen acre tract since the
spring of 1864, and that he had fenced and cultivated the
same, and that such possession was open, notorious, adverse
and hostile. Defendant testified that, in January, 1864, he
bought and received a deed to a forty acre tract, which he
supposed at the time was the tract in dispute, but which
was in fact a different forty ; that so believing, he took
possession of the forty in dispute, made the improvements
above specified, and did not discover his mistake until July,
1873, when he went to one Sanders to get an abstract of
the title for the purpose of executing a mortgage, when he
ascertained that he had no title to the forty in controversy,
but that plaintiff owned it, and he thereupon mortgaged the
forty which he did own. No change of possession occurred
after this discovery, but defendant continued in possession
as before.

Plaintiffs asked the court to declare that, having taken
possession under the circumstances testified to by defendant,
1. MISTAKEN POS- his possession was not adverse and hostile,
SESSION, WHEN
ADVERSE. which the court refused. They rely in support
of the doctrine of that refused instruction upon the followi..g

cases: *Knowlton v. Smith*, 36 Mo. 507; *Kincaid v. Dormey*, 47 Mo. 337; *St. Louis University v. McCune*, 28 Mo. 483; *Thomas et al., v. Babb et al.*, 45 Mo. 384. Bliss, J., in the last case cited, states very clearly the doctrine of those cases. "It is not uncommon for adjoining proprietors, in making their division fences, to mistake the true line of division. Sometimes they intend to make the line of the fence the actual boundary of their separate property, claiming and occupying up to it as the individual property of each, and each understanding the character of the claim and occupancy of the other; but, sometimes also, they make the fence as a division of convenience, mistaking or ignoring the true line; or, one of them may make it as part of a necessary inclosure, without intending to claim beyond the true line. In the one case the occupancy would be adverse, in the other it would not."

In *Kincaid v. Dormey*, the same learned judge said: "I find, first, that the court gave the correct doctrine upon the question of adverse possession in holding, by mistake, up to a division fence and over the true line, without claiming to own anything more than what is embraced in the true line. The law upon that subject has been so repeatedly declared by this court as to require no further comment;" citing the cases above referred to. In *St. Louis University v. McCune*, 28 Mo. 485, Richardson, J., delivering the opinion of the court, said: "If the plaintiffs erected their fence accidently upon the defendant's land, through mistake or ignorance of the correct line separating the tracts, and without intending to claim beyond their true line, then the line of occupation thus taken, and the possession that followed it, did not work a disseisin." The doctrine deducible from these utterances of this court is, that if one by mistake inclose the land of another, and claim it as his own, his actual possession will work a disseisin; but if, ignorant of the boundary line, he makes a mistake in laying his fence, making no claim, however, to the land up to the fence, but only to the true line as it may

be subsequently ascertained, and it turns out that he has inclosed the land of the adjoining proprietor, his possession of that land is not adverse.  *Tamm v. Kellogg*, 49 Mo. 122; *Hamilton v. West*, 63 Mo. 93.

If this be the correct doctrine, that of the refused instruction is not.  Here the defendant, by mistake it is true, took possession of the land belonging to the plaintiffs.  He claimed it as his own.  He had no thought of yielding possession to a true owner, if it was not his land.  He had no doubt that it was his, and he took possession under no other view than that it was his.  It cannot be said that he intended to take and hold the land until it should be determined or ascertained whether it was his or not.  No such thought was in his mind.  He had but one thought, that it was his land, and he would take possession of it and make his improvements.

Danl. Walbrunn, one of the plaintiffs, testified that, in the fall of 1873, Mr. Sanders informed him that defend-
2. ADVERSE POS- ant was in possession of his land; that soon
SESSION: proposal thereafter, in the same fall, he saw defendant
to buy conflicting
claim.         on the street near the store of witness, and said to him: "I hear you are in possession of my land. He said he was—that he had learned from Mr. Sanders that witness owned it.  Witness then told him he would sell it to him, and defendant asked what will you take for it?  Witness answered $18 per acre.  Defendant then replied: "I havn't the money to buy with; I had rather sell my forty."  Defendant, in his testimony, said he had no recollection of a conversation between him and Danl. Walbrunn prior to 1875, and that he never, at any time, proposed to Walbrunn to buy the land.

Plaintiff asked the court to give the following instruction, which was refused:  "If the defendant had no title, or color of title, or claim of right to the land in controversy, but while in possession of said land, and before ten years from the date of this entry had elapsed, and less than ten years before this suit was commenced, he applied to said

plaintiffs to buy said land from them, then such application to purchase was an acknowledgment that he did not hold adversely to plaintiffs." The court, however, gave the following: "If defendant did any act while in possession of the land in dispute showing that he recognized plaintiffs as the true owners, then, from the time of doing such act his adverse possession ceased." "There can be no adverse holding without an intent to hold adversely; and if the defendant did any act before the expiration of ten years from the entry indicating that he recognized the plaintiffs' title, then, and from that time, the statute of limitations ceased to run." The court properly refused the first of the foregoing instructions. A proposition to buy the land by the person in possession, is not necessarily a recognition of the title of the person of whom he proposes to purchase. " To prevent the operation of the statute a parol acknowledgment of the adverse title by the person in possession, must be such as to show that he intends to hold no longer under a claim of right; but declarations made merely with a view to compromise a dispute, are not sufficient." Angell on Lim., 388. It was well enough to leave it to the jury, or the court sitting as such, to determine, from the evidence, whether such a proposition was made, and with what intent; but it would not have been proper, under the circumstances, for the court to declare, as a matter of law, that a poposition by defendant to purchase of plaintiffs was an acknowledgment that he did not hold adversely to them. Besides, the testimony of Danl. Walbrunn did not prove that defendant made a direct proposition to buy, but that Walbrunn proposed to sell the land to defendant, who merely asked his price and declined to purchase. The instructions given properly presented that matter to the court sitting as a jury, and the finding of the facts by the court was warranted by the evidence. The judgment is affirmed, all concurring.

AFFIRMED.